IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IBRAHIM HALIL HERDEM,<br><br>Petitioner,<br><br>vs.<br><br>TODD M. LYONS, in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; and JEROME KRAMER, Sheriff of Lincoln County Jail, Nebraska, custodian of detainees of the Lincoln County Jail In his official capacity,<br><br>Respondents. | **4:26CV3158**<br><br><br>**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

On May 26, 2026, Petitioner Ibrahim Halil Herdem filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Filing 1. However, in a prior Petition for a Writ of Habeas Corpus—filed on January 27, 2026, and denied by the undersigned on March 20, 2026—Herdem asserted identical claims.[1] In his Return, the Federal Respondent[2] asserts "[a]s a threshold issue" that the current Petition should be dismissed in whole or in part as an abuse of the writ and "[a]lternatively" that nothing has occurred that would justify a different result now. Filing 6 at 1.

For the reasons stated below, the Court concludes that Herdem's current Petition is not an abuse of the writ because it is based on new evidence not available at the time of his prior Petition. The Court also concludes that Herdem has now been detained well in excess of the six months that the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), deemed presumptively

---

[1] *See* Case No. 7:26cv5001, CM/ECF #14, *published at Herdem v. Noem*, No. 7:26CV5001, 2026 WL 788087 (D. Neb. Mar. 20, 2026). All future references to the Court's opinion on Herdem's First Petition will refer to the published version.

[2] The Federal Respondent is Todd Lyons, the Acting Director of the United States Immigration and Customs Enforcement (USCIS). Herdem alleges that Lyons is his "legal custodian." Filing 1 at 4 (¶ 16). The State Respondent is Jerome Karmer, the Sheriff of Lincoln County. Kramer is Herdem's physical custodian because Herdem is detained in the Lincoln County Jail in Nebraska. Filing 1 at 5 (¶ 17).

1

constitutional for Immigration and Customs Enforcement (ICE) to effect an alien's removal. More importantly, during that lengthened detention, ICE has brought forward nothing to indicate that there is a substantial likelihood of Herdem's removal in the reasonably foreseeable future. Indeed, the record now demonstrates no effort at all by ICE to make Herdem's removal significantly likely within the shrinking window of the reasonably foreseeable future. At this point, only speculation suggests Herdem's removal might occur in the reasonably foreseeable future. Thus, enough has changed to warrant relief on Herdem's second Petition now before the Court.

## I.  INTRODUCTION

### A.  Factual Background

Herdem's current Petition (the Second Petition), Filing 1, not only involves claims identical to those in his prior Petition (the First Petition), but it asserts largely identical facts and arguments as well. For his part, the Federal Respondent offers a declaration in support of his Return that is largely identical to and signed by the same declarant as the one on which Federal Respondents relied in response to Herdem's First Petition.

### 1.  Reiterated Allegations

Herdem alleges that he "is a citizen of Turkey only, with no other citizenship or nationality." Filing 1 at 2 (¶ 3), 5 (¶ 18). He entered the United States on or about November 2023. Filing 1 at 5 (¶ 19). Federal Respondents' declarant, Deportation Officer Seth Patrin, states that Herdem was not admitted or paroled into the United States by an Immigration Officer. Filing 8 at 3 (¶ 11). Herdem was taken into custody on November 23, 2023, and served with a Form I-862 Notice to Appear charging him under the Immigration and Naturalization Act (INA) § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General. Filing 8 at 3 (¶ 12). He was subsequently released on

2

an Order of Recognizance (I-220A). Filing 8 at 3 (¶ 13); *see also* Filing 1 at 5 (¶ 19) (alleging that Herdem was subsequently released).

On January 31, 2025, Herdem was arrested in North Dakota and charged with "Aggravated Domestic Violence, [two counts of] [I]nterfering with an Emergency Call, Felonious Restraint, . . . Suffocation, and Burglary." Filing 8 at 4 (¶ 15) (duplicate offense omitted). Herdem submitted a Register of Actions for his criminal case in North Dakota showing that all charges against him were dismissed on April 16, 2025. Filing 1-2 at 2. Upon his release from jail in North Dakota on April 15, 2025, Herdem was arrested by Immigration and Customs Enforcement (ICE). Filing 8 at 4 (¶ 16). On July 17, 2025, in proceedings in Immigration Court, an Immigration Judge (IJ) denied Herdem's application for asylum and ordered him removed from the United States to Turkey, but the IJ also granted Herdem's application for withholding of removal to Turkey based on a finding that Herdem "has established that he suffered past persecution in Turkey." Filing 1-1 at 21, 26.

Herdem alleges—as he did in his First Petition—that since the IJ's decision in July 2025, ICE has continued to detain him, stating that it is "looking for another country" for removal, but that ICE has not identified one so far. Filing 1 at 5 (¶ 21). Herdem alleges that ICE has been unresponsive to his inquiries regarding his custody status for several months. Filing 1 at 5 (¶ 22). Officer Patrin avers that on October 21, 2025, ICE Enforcement and Removal Operations (ERO) in St. Paul Minnesota (SPM) contacted ICE Headquarters (HQ) for updates regarding third country removal options, and ICE HQ indicated that it was actively pursuing third country removal options at that time. Filing 8 at 4 (¶ 18). On December 4, 2025, Herdem was transferred to the Lincoln County Jail in Nebraska. Filing 8 at 4 (¶ 19). On January 22, 2026, ICE HQ again reported that it was actively working with the Department of State (DOS) and the Department of Homeland

3

Security (DHS) on avenues to remove Herdem to a third country. Filing 8 at 4 (¶ 21). On January 22, 2026, Herdem received notice from ICE that his detention would continue. Filing 1 at 7 (¶ 31).

### 2. New Allegations

Herdem offers some new allegations in his Second Petition about information he has received concerning his detention pending removal to a third country. He alleges,

> 9.      Petitioner has also been denied meaningful procedural review of his detention. Although ICE informed Petitioner on April 22, 2026, that his case required further review, no decision or substantive update has been provided to Petitioner to date. ICE has informed Petitioner that it is seeking a third country for removal. However, Petitioner has already been granted withholding of removal and remains legally authorized to reside and work in the United States pursuant to that protection.

Filing 1 at 3 (¶ 9) (citations omitted); *see also* Filing 1 at 7 (¶ 31) (making similar allegations). Herdem also now alleges that as of the time of filing of his Second Petition (May 26, 2026) he had been detained for more than thirteen months and for more than ten months since he was granted withholding of removal. Filing 1 at 5 (¶ 23). He asserts that such detention is far in excess of the six-month period deemed presumptively reasonable by the Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678 (2001). Filing 1 at 25 (¶ 23).

Herdem also now alleges,

> 32.      To this day, ICE has failed to identify any country willing to accept Petitioner, has provided no evidence that removal is significantly likely in the reasonably foreseeable future, and continues to . . . subject Petitioner to prolonged and potentially indefinite detention without meaningful custody review.
>
> 33.      Petitioner has no criminal convictions. Any prior criminal charge referenced during his immigration detention proceedings was dismissed and did not result in a conviction.

Filing 1 at 7 (¶¶ 32–33) (repeated text and citations omitted).

Herdem also makes more extensive allegations about his deteriorating health, the lack of proper response to his medical issues, and the inhumane and unsanitary conditions that he is allegedly experiencing in ICE detention. Filing 1 at 2–3 (¶¶ 7–8), 5–7 (¶¶ 24–30). As was the case

4

with his First Petition, Herdem's Second Petition does not base any claims for habeas relief on those issues.

DO Patrin makes additional averments about ICE's further efforts to find a third country to which Herdem can be removed:

> 22.    On March 24, 2026, ICE ERO SPM contacted ICE HQ for updates regarding third country removal options. ICE HQ indicated they were actively pursuing third country removal options at that time.
>
> 23.    On May 13, 2026, ICE ERO SPM contacted ICE HQ for updates regarding third country removal options. ICE HQ indicated they were actively pursuing third country removal options at that time.
>
> 24.    On June 22, 2026, ICE ERO SPM contacted ICE HQ for updates regarding third country removal options. ICE HQ indicated they were actively pursuing third country removal options at that time.

Filing 8 at 4–5 (¶¶ 22–24).

### B.  Procedural Background

The claims in Herdem's Second Petition are the same claims in identical terms as he asserted in his First Petition. In Count I, he asserts violation of substantive due process under the Fifth Amendment, based on a liberty interest defined in *Zadvydas*, 533 U.S. at 690. Filing 1 at 16 (¶ 74). He alleges, "Because Petitioner's removal is not significantly likely in the reasonably foreseeable future, his continued detention is not reasonably related to a legitimate, non-punitive government interest." Filing 1 at 16 (¶ 75).

In Count II, Herdem asserts violation of 8 U.S.C. § 1231(a)(6) and "the *Zadvydas* limitation," Filing 1 at 16. This claim is based on the following allegations:

> 78.    Under *Zadvydas*, the government's authority to detain under § 1231(a)(6) is limited to the period "reasonably necessary" to effectuate removal.
>
> 79.    Petitioner's cumulative detention exceeds the six-month presumptively reasonable period.
>
> 80.    Because Respondents cannot demonstrate "legitimate progress" toward removal, the statutory authority for Petitioner's detention has expired.

Filing 1 at 17 (¶¶ 78–80).

In Count III, Herdem asserts violation of procedural due process under the Fifth

Amendment. Filing 1 at 17. This claim is based on the following allegations:

> 82.    Procedural Due Process requires a meaningful and individualized determination of whether detention remains justified. *Mathews v. Eldridge*, 424 U.S. 319 (1976).

> 83.    Respondents have failed to provide Petitioner with a constitutionally adequate custody review and have further failed to provide notice and an opportunity to seek protection from third-country removal, violating the rule in *Gomez v. Mattos*, 2025 WL 3101994.

Filing 1 at 17 (¶¶ 82–83).

Lastly, in Count IV, Herdem asserts violation of the Administrative Procedure Act (APA),

5 U.S.C. § 706. Filing 1 at 17. This claim is based on the following allegations:

> 85.    Respondents' failure to follow the mandatory custody review procedures set forth in 8 C.F.R. § 241.4 and § 241.13 is arbitrary, capricious, and an abuse of discretion.

> 86.    Respondents' failure to either remove Petitioner or release him constitutes "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1).

> 87.    Respondents' policy of "surprise" third-country removal lacks reasoned decision-making and must be set aside under 5 U.S.C. § 706(2)(A).

Filing 1 at 17 (¶¶ 85–87).

Herdem likewise seeks relief in his Second Petition that is identical to the relief he sought

in his First Petition. That relief includes "[g]rant[ing] a writ of habeas corpus directing

Respondents to immediately release Petitioner from their custody." Filing 1 at 18 (Prayer, ¶ 7).[3]

---

[3] Herdem's Prayer for Relief states the following:

WHEREFORE, Petitioner respectfully requests that this Court:

1.   Assume jurisdiction over this matter;

2.    Grant the petition for a writ of habeas corpus;

The undersigned was assigned this case on May 26, 2026, the same day the Second Petition was filed. Filing 2. On May 28, 2026, the Court entered an Order to Show Cause. Filing 3. That Order set deadlines for Respondents to make a return certifying the true cause of Herdem's detention and why his Petition should not be granted not later than three business days after service of Herdem's Second Petition and the Order to Show Cause. Filing 3 at 4 (¶ 3). It also set a deadline for Herdem to file a reply. Filing 3 at 4 (¶ 4). The Order stated, "Upon the filing of Respondents' return(s) and Herdem's reply, the Court will determine whether or not to set a hearing on this matter prior to disposition." Filing 3 at 4 (¶ 5).

On July 8, 2026, the State Respondent's counsel filed an appearance, and on July 9, 2026, the State Respondent filed his Response to Order to Show Cause. Filing 4; Filing 5. The State Respondent explains that he responds to state his belief that he is a party to this action only because he is Herdem's physical custodian and that as such he "does not take a position on the substantive

---

3. Issue an order directing Respondents to show cause within three (3) days why the Writ should not be granted, pursuant to 28 U.S.C. § 2243;

4. Issue an order prohibiting Respondents from transferring Petitioner outside of this judicial district during the adjudication of this Petition without the fear-based protections required by law;

5. Expedite consideration of this action pursuant to 28 U.S.C. § 1657 because it is an action brought under 28 U.S.C. § 153;

6. Declare that Respondents' actions or omissions violate the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6), the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

7. Grant a writ of habeas corpus directing Respondents to immediately release Petitioner from their custody;

8. Permanently enjoin Respondents from removing Petitioner to any third country without providing at least thirty (30) days' advance written notice and a meaningful opportunity to seek fear-based protection (Withholding of Removal or CAT) before an Immigration Judge, consistent with the requirements of Procedural Due Process;

9. Award Petitioner reasonable attorney's fees and costs of this action under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, and any other applicable law; and 4:26-cv-03158-BCB-RCC Doc # 1 Filed: 05/26/26 Page 18 of 20 - Page ID # 18

10. Grant such other and further relief as the Court deems just and proper.

Filing 1 at 18–19.

issues raised in the [Second] Petition, nor does [he] take a position on whether Petitioner's writ should or should not be granted." Filing 5 at 1.

On July 9, 2026, the Federal Respondent filed his Response to the [Second] Petition for Writ of Habeas Corpus challenging Herdem's entitlement to any relief, as well as an Index of Evidence in Support of Its Response to [Second] Petition for Writ of Habeas Corpus, and the Declaration of Deportation Officer Seth Patrin. Filing 6; Filing 7; Filing 8. On July 14, 2026, Herdem filed a Reply to Respondents' Response to [Second] Petition for Writ of Habeas Corpus. Filing 10.

## II. LEGAL ANALYSIS

### A. Preliminary Matters

The Court finds that it must first address some preliminary matters. This Court has taken the position that it will not proceed further on a petition for habeas corpus relief pursuant to § 2241 until the record demonstrates that the petitioner's physical custodian has been served, thus establishing the Court's jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 442 (2004) (concluding that the proper respondent to a habeas petition is the person who has custody over the petitioner). In this case, the State Respondent has been served, appeared, and filed a response indicating that he takes no position on the matters presented. Filing 5. Thus, the Court concludes that it may proceed with the case. *Padilla*, 542 U.S. at 434–35, 442.

After reviewing the parties' written submissions, the Court concludes that an evidentiary hearing is not required because a conclusion can be reached on the legal issues presented and because there are no factual disputes that are outcome determinative. *Cf. Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072

8

(8th Cir. 1988))). Therefore, the Court will consider Herdem's Second Petition on the parties' written submissions without an evidentiary hearing.

### B. Abuse of the Writ

The first substantive issue before the Court is the Federal Respondent's "threshold issue" that Herdem's Second Petition should be dismissed in whole or in part as an abuse of the writ.

### 1. *The Parties' Arguments*

In support of his argument, the Federal Respondent cites *United States v. Camacho-Bordes,* 94 F.3d 1168, 1173 (8th Cir. 1996). Filing 6. The Federal Respondent argues that various Circuit Courts of Appeals have recognized that the abuse-of-the-writ doctrine bars subsequent § 2241 habeas petitions that raise claims that could have been raised in the first petitions. Filing 6 at 10 (citing cases). It appears that the Federal Respondent believes that the abuse-of-the-writ doctrine should likewise bar Herdem's Second Petition because it asserts claims that are identical to those in the First Petition rather than claims that could have been raised in the First Petition. The Federal Respondent asserts that the Court has already rejected Herdem's claims, so the Court should now dismiss the Second Petition for abuse of the writ. Filing 6 at 11.

Herdem responds that, to the extent that the Federal Respondent invokes the traditional abuse-of-the-writ doctrine, he has not withheld a claim that could have been raised on the earlier factual basis. Filing 10 at 4. Rather, he argues that he now challenges the legality of his continuing detention based on facts and an additional period of confinement that did not exist when his First Petition was adjudicated. Filing 10 at 4. He contends that this distinction is particularly important under *Zadvydas*, because the standards for a *Zadvydas* claim change as the detention continues. Filing 10 at 4.

*2. The Second Petition Is Not an Abuse of the Writ*

The Court reads the Federal Respondent's argument to rely on the traditional doctrine of abuse of the writ rather than the statutory version in 28 U.S.C. § 2244. For example, the Federal Respondent never cites § 2244. Instead, he relies on *Camacho-Bordes*, which discussed "the equitable abuse of the writ doctrine." 94 F.3d at 1173. In *Camacho-Bordes*, the Eighth Circuit explained that "it is well settled that, in habeas cases, res judicata is subsumed under the equitable abuse of the writ doctrine, and is therefore inapplicable," and the court held that the equitable abuse of the writ doctrine also applied to a petition for a writ of coram nobis. 94 F.3d at 1173. In that case, the Eighth Circuit concluded that the abuse-of-the-writ doctrine did not bar a second petition asserting a claim of breach of a plea agreement even though a similar claim had been asserted in an earlier petition because the second claim was based on a recent decision changing the law and new evidence. *Id.*

Some years later, the Eighth Circuit explained that the bar on a "second or successive" habeas petition under 28 U.S.C. § 2244 was "guided by abuse of the writ principles." *Singleton v. Norris*, 319 F.3d 1018, 1023 (8th Cir. 2003). The Eighth Circuit then explained that "a habeas petition raising a claim that had not arisen at the time of a previous petition is not barred by § 2244(b) or as an abuse of the writ." *Id.*; *see also Deroo v. United States*, 709 F.3d 1242, 1244 (8th Cir. 2013) (relying on *Singleton*, 319 F.3d at 1023, to hold that a § 2255 motion was not second or successive where the claim presented had not yet arisen at the time of the earlier motion).

The Court concludes that the abuse-of-the-writ doctrine does not bar Herdem's claims in his Second Petition to the extent that those claims are based on new evidence not available at the time of his First Petition. *Camacho-Bordes*, 94 F.3d at 1173. Herdem is correct that his *Zadvydas* claims in his Second Petition had not arisen at the time of his First Petition. *Singleton*, 319 F.3d at 1023. The Supreme Court made clear in *Zadvydas* that the duration of detention affects a claim

10

involving the reasonableness of detention. 533 U.S. at 701. Specifically, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Thus, even though Herdem asserts the same claims of detention in violation of *Zadvydas* in both of his Petitions, the new facts related to his longer detention at issue in his Second Petition mean that the current *Zadvydas* claim had not arisen at the time of his First Petition. *Singelton*, 319 F.3d at 1023. If the Court accepted the Federal Respondent's argument, then an alien who challenged his detention too soon after being ordered removed could never challenge it again, even as the duration of detention further exceeded the 6-month presumptive constitutional limit set out in *Zadvydas*. The Court declines to accept such a result.

Thus, the Court rejects the Federal Respondent's argument that the abuse-of-the-writ doctrine bars Herdem's claims in his Second Petition.

### C.  Herdem's *Zadvydas* Claims

The Court turns next the merits of Herdem's Second Petition. The Court finds that the dispositive claims are Counts I and II that both rely on *Zadvydas*. The Court begins its analysis of these claims with a summary of the applicable standards.

*1.  Applicable Standards*

a.  Standards for § 2241 Habeas Relief

Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Herdem. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section

11

2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))).

The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243. District Courts in this Circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

   b. Standards Governing Detention, Release, and Removal of
      Individuals Ordered Removed

Herdem's *Zadvydas* claims involve his detention after a final order of removal. Section 1231 of Title 8 of the United States Code "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (citing 8 U.S.C. § 1231(a)). Section 1231(a)(1) specifies a 90-day removal period that begins—in this case—on the date that Herdem's order of removal became administratively final, and the circumstances in which the removal period may be suspended. 8 U.S.C. § 1231(a)(1)(A)–(C). Thus, as the Supreme Court explained, "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Johnson*, 596 U.S. at 578 (citing 8 U.S.C. § 1231(a)(1)(A)); *Mumad v. Garland*, 11 F.4th 834, 837 (8th Cir. 2021) ("Under the Immigration and Nationality Act, Congress directs the Attorney General to remove an alien from the country within ninety days of a removal order." (citing 8 U.S.C. § 1231(a)(1)(A)).

12

The statute provides "that the Government 'shall' detain noncitizens during the statutory removal period." *Johnson*, 596 U.S. at 578 (quoting 8 U.S.C. § 1231(a)(2)). It also provides for release with supervision of an alien after the 90-day removal period expires. 8 U.S.C. § 1231(a)(3). Section 1231(a)(6) limits detention of aliens ordered removed beyond the removal period. As the Supreme Court explained,

> After the removal period expires, the Government "may" detain only four categories of people: (1) those who are "inadmissible" on certain specified grounds; (2) those who are "removable" on certain specified grounds; (3) those it determines "to be a risk to the community"; and (4) those it determines to be "unlikely to comply with the order of removal." § 1231(a)(6). Individuals released after the removal period remain subject to terms of supervision. *Ibid*.

*Johnson*, 596 U.S. at 578–79. Section 1231(b) identifies countries to which aliens may be removed. 8 U.S.C. § 1231(b).

Perhaps more importantly in this case, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court concluded that in the case of aliens who were admitted to the United States but subsequently ordered removed, "indefinite detention . . . would raise serious constitutional concerns," so the Supreme Court "construe[d] the statute [*i.e.*, 8 U.S.C. § 1231(a)(6)] to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Zadvydas*, 533 U.S. at 682. In *Zadvydas*, the Supreme Court recognized a 6-month presumptively constitutional period of detention. *Id*. at 701. The Supreme Court explained,

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701. However, the Supreme Court cautioned that a standard that required an alien seeking release "to show the absence of *any* prospect of removal—no matter how unlikely

13

or unforeseeable" would "demand[ ] more than [the Court's] reading of the statute can bear." *Id.* at 702 (emphasis in the original).

### 2. The Applicability of Zadvydas to Herdem

#### a. The Parties' Arguments

*Zadvydas* stated the rule for aliens who were admitted to the United States but subsequently ordered removed, while Herdem was ordered removed because he is inadmissible. Nevertheless, the Court decided Herdem's *Zadvydas* claims in his First Petition on their merits.

This time, however, the Federal Respondent argues that *Zadvydas* does not apply to aliens who were not admitted to the United States, such as Herdem. Filing 6 at 12. The Federal Respondent argues that where *Zadvydas* does not apply, indefinite detention of an alien not presently removable is allowed unless there is no possibility of removal. Filing 6 at 12 (citing *Nma v. Ridge*, 286 F. Supp. 2d 469, 473 (E.D. Pa. 2003), in turn citing *Ngo v. INS*, 192 F.3d 390, 397 (3rd Cir. 1999)). The Federal Respondent argues that "the Court may find no constitutional violation on this basis alone and dismiss the Petition in its entirety." Filing 6 at 12.

In his Reply, Herdem argues that the *Zadvydas* limitation applies to him regardless of his admissibility status. Filing 10 at 5. He argues that the Federal Respondent's reliance on *Nma* "overlooks controlling Supreme Court authority decided two years later," *i.e.*, two years after both *Zadvydas* and *Nma*. Filing 10 at 5. Herdem points to the Supreme Court's decision in *Clark v. Martinez*, 543 U.S. 371, 378 (2005), which he asserts states that the *Zadvydas* limitation must apply to inadmissible aliens as well as admitted aliens subject to removal. Filing 10 at 5.

#### b. Zadvydas Is Applicable to Removal of an Inadmissible Alien

The Court notes that shortly after the Supreme Court decided *Zadvydas*, the Eighth Circuit held "that *Zadvydas*'s six-month presumption of reasonableness is inapplicable to inadmissible

aliens." *Borrero v. Aljets*, 325 F.3d 1003, 1007 (8th Cir. 2003). That is not the end of the matter, however.

In 2005, in *Clark v. Martinez*, the Supreme Court stated,

> The question presented by these cases, and the question that evoked contradictory answers from the Ninth and Eleventh Circuits, is whether this construction of § 1231(a)(6) that we applied [in *Zadvydas*] to the second category of aliens covered by the statute [*i.e.*, those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4),] applies as well to the first— that is, to the category of aliens "ordered removed who [are] inadmissible under [§ ]1182." We think the answer must be yes.

*Clark*, 543 U.S. at 378. The Supreme Court's explanation of this conclusion was the following:

> The operative language of § 1231(a)(6), "may be detained beyond the removal period," applies without differentiation to all three categories of aliens that are its subject. To give these same words a different meaning for each category would be to invent a statute rather than interpret one. As the Court in *Zadvydas* recognized, the statute can be construed "literally" to authorize indefinite detention, *id*., at 689, 121 S.Ct. 2491, or (as the Court ultimately held) it can be read to "suggest [less than] unlimited discretion" to detain, *id*., at 697, 121 S.Ct. 2491. It cannot, however, be interpreted to do both at the same time.

*Clark*, 543 U.S. at 378. Thus, in the cases before it, the Supreme Court concluded, "Since the Government has suggested no reason why the period of time reasonably necessary to effect removal is longer for an inadmissible alien, the 6–month presumptive detention period we prescribed in *Zadvydas* applies." *Clark*, 543 U.S. at 386 (citing *Zadvydas*, 533 U.S. at 699–701).

*Clark* establishes that Herdem's claims for habeas relief based on *Zadvydas* are legally cognizable even though he was ordered removed as an inadmissible alien.

3.   The *Zadvydas* *Analysis*

Turning to the merits of Herdem's *Zadvydas* claims, the Supreme Court set out the requirements to establish a *Zadvydas* violation: "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Thus, the *Zadvydas* analysis involves two steps: (1) consideration of

15

whether, after the 6-month period of presumptively constitutional detention, the alien has provided good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and if the alien does so, (2) consideration of whether the Respondent has presented sufficient evidence to rebut the alien's showing. *Id*. The Court will consider Herdem's *Zadvydas* claims in these two steps.

a. Herdem's Initial Burden

i. The Parties' Arguments

Although Herdem did not address his initial burden under *Zadvydas* in his First Petition, he does address it in his Second Petition. Herdem interweaves new arguments with his new factual allegations relevant to his initial burden. As pointed out above in § I.A.2., he argues that his detention is not only far in excess of the 6-month period that the Supreme Court found was presumptively reasonable in *Zadvydas* but that ICE has failed to show any progress in finding a third country that will take him and has provided no review of his prolonged detention. Filing 1 at 3 (¶ 9), 5 (¶ 23), 7 (¶¶ 31–33).

In response, the Federal Respondent argues that Herdem cannot meet his initial burden simply by showing the passage of time. Filing 6 at 12. The Federal Respondent argues that Herdem is not aware which third country among possible options may be the best fit for his removal and does not make a showing that removal to such a country will not be feasible. Filing 6 at 13. Thus, the Federal Respondent argues that "it cannot be said there is '*no* significant likelihood of removal in the reasonably foreseeable future.'" Filing 6 at 13 (quoting *Zadvydas*, 533 U.S. at 701, with emphasis added by the Federal Respondent).

In a reply in support of his Second Petition—something Herdem did not file in support of his First Petition—Herdem argues that he is not contending that the expiration of six months automatically renders his detention unlawful. Filing 10 at 2. He argues,

> Rather, after nearly one year of post-order detention, the record now provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner cannot lawfully be removed to his sole country of citizenship; Respondents have not identified an alternative country willing to receive him; and additional months of asserted removal efforts have produced no concrete destination.

Filing 10 at 2; *see also* Filing 10 at 6. He contends that the grant of withholding of his removal to his sole country of citizenship is an individualized barrier to his removal that also supports his "good reason to believe" argument. Filing 10 at 6–7. Finally, he also contends that he was not required to designate a third country of removal because § 1231(b)(2)(A) permits but does not require an alien to do so. Filing 10 at 8.

### ii.   Herdem Has Met His Initial Burden

Herdem's initial burden is to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also Castaneda v. Perry*, 95 F.4th 750, 756 (4th Cir. 2024) ("So the question before us is whether Vasquez Castaneda has provided 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future' [and] "[i]f he has, then the burden shifts to the Government to rebut that showing. If he hasn't, then his claim fails and we proceed no further."). In considering whether Herdem has now met this burden, it is important to remember that "for the detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as 'reasonably foreseeable future' conversely would shrink." *Zadvydas*, 533 U.S. at 701. It is also important to remember that unlike the circumstances surrounding Herdem's First Petition, the presumptively reasonable period of detention has not just recently expired, but it instead expired over six months ago. Thus, Herdem's burden has lessened, and the Federal Respondent's leeway to show removal is likely in the "reasonably foreseeable future" is considerably more limited.

The record now shows that as of the filing of Herdem's Second Petition (May 26, 2026) he had been detained for more than thirteen months and for more than ten months since he was granted

17

withholding of removal. Filing 1 at 5 (¶ 23). Indeed, at the time of this decision, he has been detained over a year since he was granted withholding of removal on July 17, 2025. Such detention is well in excess of the six-month period deemed presumptively reasonable by the Supreme Court in *Zadvydas*.

In the additional months since denial of his First Petition, ICE has only once informed Herdem that his case required further review—on April 22, 2026—but ICE did not indicate what circumstances or efforts to find a third country willing to take Herdem justified "further" review. Filing 1 at 3 (¶ 9). There is no evidence that ICE has even determined what country or countries might be willing to accept Herdem, even as the leeway to establish that removal is reasonably foreseeable has shrunk. There is certainly no evidence that ICE has requested Herdem's cooperation in execution of any documents to support a request for another country to take him. This is a record that suggests more than just the passage of time; it is a record that demonstrates no good faith effort by ICE—indeed, no effort at all by ICE—to make removal significantly likely within the shrinking window of the reasonably foreseeable future.

The Court rejects the Federal Respondent's argument that "it cannot be said there is '*no significant likelihood of removal in the reasonably foreseeable future.*'" Filing 6 at 13 (quoting *Zadvydas*, 533 U.S. at 701, with emphasis added). In *Zadvydas*, the Supreme Court cautioned that a standard that required an alien seeking release "to show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable" would "demand[ ] more than [the Court's] reading of the statute can bear." *Id.* at 702 (emphasis in the original). Herdem has met the required standard by providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," which is not the same as a showing that there is in fact "no significant likelihood of removal in the reasonable foreseeable future." *Zadvydas*, 533 U.S. at 701.

Under the circumstances now presented, Herdem has met his initial burden to show that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

### b.  The Federal Respondent's Burden in Rebuttal

The burden now shifts to the Federal Respondent to "respond with evidence sufficient to rebut [Herdem's] showing." *Zadvydas*, 533 U.S. at 701.

### i.  The Parties' Arguments

In his Second Petition, Herdem argues that the government's "good faith efforts" to remove an individual are not sufficient to meet the *Zadvydas* or a Fifth Amendment standard. Filing 1 at 10 (¶ 42) (citing *Zadvydas*, 533 U.S. at 702). He also argues that once the burden shifts to the government to rebut an alien's showing that there is no significant likelihood of removal in the reasonably foreseeable future, an "unsubstantiated belief" that "ICE can request a travel document and effectuate [a petitioner's] removal from the United States to that country" is insufficient to meet the government's burden. Filing 1 at 10 (¶ 42) (quoting *McKenzie v. Gillis*, Civil Action No. 5:19-cv-139-KS-MTP, 2020 WL 5536510, at *2–*3 (S.D. Miss. July 30, 2020), *report and recommendation adopted as modified by McKenzie v. Gillis*, Civil Action No. 5:19-cv-139-KS-MTP, 2020 WL 5535367 (S.D. Miss., Sep. 15, 2020)). Instead, he argues that the government must demonstrate "legitimate progress," Filing 1 at 10 (¶ 43) (quoting *Ahrach v. Baltazar*, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025), and "concrete steps." Filing 1 at 11 (¶ 44) (citing *Aguilar v. Noem*, 2025 WL 3514282, at *5 (D. Colo. Dec. 8, 2025)). He also contends that bare assertions that ICE is "pursuing third country removal options" are legally insufficient to rebut a petitioner's showing. Filing 1 at 11 (¶ 44) (quoting *Aguilar*, 2025 WL 3514282, at *4). Herdem argues that in this case, the absence of an identified country, the lack of travel documents, and the absence of any diplomatic agreement render removal a "remote possibility" rather than a significant

19

likelihood. Filing 1 at 11 (¶ 47). Next, Herdem argues that the withholding of removal to Turkey based on the threat to his life or freedom weighs heavily in the *Zadvydas* foreseeability analysis, where he cannot be removed to his country of citizenship, and ICE has not identified a third country willing to accept him. Filing 1 at 11–12 (¶ 52). Finally, he argues that speculative or undeveloped third-country removal does not satisfy the government's burden to show removal is likely in the reasonably foreseeable future. Filing 1 at 13 (¶¶ 55–57).

In response, the Federal Respondent points to the several requests ICE ERO has made to ICE HQ concerning Herdem's removal to a third country. Filing 6 at 12. The Federal Respondent also suggests that ICE's recent increased emphasis on utilizing third-country removals supports the "reasonable foreseeability" of an alien's removal to a third country. Filing 6 at 12. Thus, the Federal Respondent requests continuation of Herdem's detention to give ICE a meaningful opportunity to remove Herdem to a third country. Filing 6 at 11.

In reply, Herdem argues that the Federal Respondent's own evidence shows there has been no meaningful progress in accomplishing his removal to a third country. Filing 10 at 2, 15. He also argues that the length of his detention affects the foreseeability analysis because reasonable foreseeability narrows as detention lengthens. Filing 10 at 13. He reiterates that general assertions about the possibility of removal are not enough to satisfy the Federal Respondent's burden. Filing 10 at 15. He argues that it is significant that the Federal Respondent has not identified any destination or any process to obtain travel documents from a third country. Filing 15. He also argues that an increase in reliance on third-country removals generally does nothing to show that his own removal is likely. Filing 10 at 16.

ii. The Federal Respondent Has Failed to Rebut Herdem's Showing that Removal Is Not Reasonably Foreseeable

In *Zadvydas*, the Supreme Court concluded that the Ninth Circuit had erred by failing to consider "the likelihood of successful future negotiations" in the context of the respondents'

rebuttal argument. 533 U.S. at 702. However, the Federal Respondent has pointed to nothing in Herdem's case that suggests that there is any likelihood that future negotiations will be successful. Indeed, the Federal Respondent's evidence suggests the contrary. Every response by ICE HQ to inquiries about the status of Herdem's third-country removal has engendered the generic response that ICE HQ was "actively pursuing third country removal options at that time." Filing 8 at 4–5 (¶¶ 22–24). Those generic responses provide no indication of any specific negotiations with any specific country or countries that might hint at any likelihood of future success, which is the relevant factor identified in *Zadvydas*. To put it another way, the Court can no longer credit the Federal Respondent's statements that ICE headquarters is actively attempting to obtain the agreement of a suitable third country for Herdem's removal as the Court was willing to do at the time the Court ruled on Herdem's First Petition. The Court can no longer just take ICE's word for it that ICE is attempting to accomplish third-country removal because of the lengthening period without any evidence of actual progress. Attempts by ICE to obtain travel documents from the government of a country to take Herdem might be enough to rebut the showing that removal was not reasonably likely in the reasonably foreseeable future, *see Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008), but there is no showing of such attempts here.

Another District Court in this Circuit stated, "[F]or there to be no significant likelihood of removal in the foreseeable future, there must be some indication that the government is either unwilling or, due to seemingly insurmountable barriers, incapable executing an alien's removal." *Deqa M. Y. v. Barr*, No. 20-CV-1091 (ECT/DTS), 2020 WL 4926618, at *2 (D. Minn. Aug. 21, 2020). That court stated that one of the factors relevant to this determination is "where the detainee is stateless and no country will accept [her]." *Id.* At this point, Herdem is effectively "stateless" where the IJ withheld Herdem's removal to Turkey, his only country of citizenship because of Herdem's past persecution there. That effective "statelessness" considerably reduces the prospects

21

for Herdem's removal in the reasonably foreseeable future, particularly coupled with his additional months of detention with no evidence that ICE is making any actual effort to obtain agreement of a third country willing to take him. From this record, the Court concludes that because of seemingly insurmountable barriers, ICE is incapable of executing Herdem's removal in the reasonably foreseeable future. *Id.* Rather, at this point, only speculation suggests Herdem's removal might occur in the reasonably foreseeable future.

Even if Herdem is not effectively "stateless," the IJ's withholding of Herdem's removal to Turkey does make removal to a third country far less likely in the reasonably foreseeable future. Indeed, in *Clark v. Martinez*, after concluding that *Zadvydas* applies to an alien ordered removed because the alien is inadmissible, the Supreme Court held,

> Both Martinez and Benitez were detained well beyond six months after their removal orders became final. The Government having brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba); and the District Court in each case having determined that removal to Cuba is not reasonably foreseeable; the petitions for habeas corpus should have been granted.

*Clark*, 543 U.S. at 386–87. The circumstances here are at least comparable, in that an IJ has determined that Herdem cannot be removed to Turkey, his country of citizenship, so that ICE is foreclosed from seeking Herdem's removal to Turkey rather than simply conceding that it is not negotiating with Turkey for his removal. As in *Clark*, ICE has "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months." *Id.* at 386. The record here contains no evidence of any actual efforts by ICE to obtain Herdem's removal to a third country, rendering Herdem's removal to a third country unlikely in the reasonably foreseeable future, a period much shortened by Herdem's detention well beyond six months, albeit not for as long as the aliens in *Clark* were detained. *See id.* The Court concludes that Herdem's removal is not reasonably foreseeable to Turkey, nor is it reasonably foreseeable to any third

country, either. In these circumstances, Herdem's Second Petition for a writ of habeas corpus should be granted. *Id*. at 386–87.

The Federal Respondent attempts to rebut that conclusion by asserting that ICE's recent increased emphasis on utilizing third-country removals supports the "reasonable foreseeability" of an alien's removal to a third country. Filing 6 at 12. In this Court's view, the increased emphasis on third-county removals does nothing to increase the likelihood of Herdem's removal to a third country in the reasonably foreseeable future. Even if the emphasis on third-country removals means that there has also been a general increase in actual removals of aliens to third countries, there is still no evidence in the record that an increased emphasis on third country-removals has had any impact on Herdem's likelihood of removability, especially in the absence of any other evidence of actual efforts to obtain his removal to a third country.

Herdem has proved his claims that his continued detention violates *Zadvydas* and the Fifth Amendment. Thus, he is entitled to habeas corpus relief.

### D.  Appropriate Relief

Herdem sought numerous kinds of relief in his Second Petition. Most of the relief he requests has been mooted by the Court's consideration of his Second Petition and/or the Court's finding in his favor on his *Zadvydas* and Fifth Amendment claims related to continued detention without significant likelihood of removal in the reasonably foreseeable future. Of the relief requested, the Court concludes that the appropriate relief in the circumstances is "[g]rant[ing] the petition for a writ of habeas corpus" and, more specifically, "[g]rant[ing] a writ of habeas corpus directing Respondents to immediately release Petitioner from their custody." *See* Filing 1 at 18 (Prayer, ¶¶ 2, 7). However, that release is not unconditional.

23

Rather, as the Supreme Court has explained, "Individuals released after the removal period remain subject to terms of supervision." *Johnson*, 596 U.S. at 579 (citing 8 U.S.C. § 1231(a)(6)). Section 1231(a)(3) provides for supervision after the 90-day removal period expires, as follows:

(3) Supervision after 90-day period

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—

(A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3).[4] The Court finds nothing in *Zadvydas* that would make this provision inapplicable, where the six-month presumptively constitutional period of detention has expired without removal. Herdem has cited nothing that would require unconditional release or make release on the § 1231(a)(3) conditions inappropriate in these circumstances. Thus, the Court will impose these conditions on Herdem's release.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.    Petitioner Ibrahim Halil Herdem's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Filing 1, is granted on his claims of unconstitutional continued detention in violation of his *Zadvydas* and Fifth Amendment in Counts I and II of his Petition;

---

[4] Revocation of supervised release is permissible under 8 C.F.R. § 241.13(i).

24

2.       His Petition is otherwise denied as moot; and

3.       Petitioner Ibrahim Halil Herdem is ordered released from ICE detention, on the conditions set forth in 8 U.S.C. § 1231(a)(3), as expeditiously as possible, but not later than 7 days from the date of this Order.

Dated this 4th day of August, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge